UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| LISA RENEE CALLICOTT, | ) | Case No. 07-44753-659 |
| | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | **PUBLISHED** |

# O R D E R

The matter before the Court is Debtor's Objection to Claim 1-1 of Nuvell Credit Company LLC, Response by Nuvell Credit Company, L.L.C. to Debtor's Objection to Claim, Brief in Support of Debtor's Objection to Claim 1-1 of [sic] Nuvell Credit Company and Brief in Support of Nuvell Credit Company, L.L.C.'s Response to Debtor's Objection to Nuvell's Claim. Upon consideration of the record as a whole, the Court issues the following FINDINGS OF FACT:

On July 26, 2007, Debtor Lisa Renee Callicott (hereinafter "Debtor") filed a Voluntary Bankruptcy Petition under Chapter 13. Nuvell Credit Company, L.L.C. (hereinafter "Creditor") filed a proof of claim in the amount of $26,709.14, secured by the purchase of a vehicle. Debtor filed an Objection to Creditor's claim asserting that Creditor's purchase money security interest and therefore secured claim amounts to only $20,195.14 after considering negative equity of $4,149.65, Caregard in the amount of $1,795.00 and GAP protection in the amount of $600.00. There is a miscalculation in that $26,709.14 less, $4,149.65, $1,795.00 and $600.00 totals $20,164.49.

Debtor obtained financing from Creditor on January 20, 2006 to purchase a 2005 Chevrolet Impala (hereinafter "Chevrolet"). At the time of purchase, Debtor traded-in a 1999 Chrysler 300M (hereinafter "Chrysler") with a remaining debt due of $7,149.65. Debtor received a trade-in allowance of $3,000.00 from Creditor. After the trade-in allowance, Debtor owed $4,149.65 on the Chrysler. Creditor included Debtor's balance owed on the Chrysler of $4,149.65 in the financing package for the purchase of the Chevrolet.

Debtor also purchased Careguard in the amount of $1,795.00 and GAP protection in the amount of $600.00, which was included in the loan amount from Creditor. Debtor's Objection regarding these items has been settled by the parties in that Debtor cancelled both and the policies were terminated.

Debtor's Objection to Creditor's secured proof of claim is made pursuant to 11 U.S.C. §§ 506(a)(1) and 1322(b)(2), in that Debtor alleges that cram down of a secured claim to the retail value of the purchased vehicle is allowed if the vehicle owner seeks relief under the Bankruptcy Code. Debtor argues that Creditor financed the vehicle with the knowledge that Debtor would be allowed to cram down the secured claim to the retail value of the vehicle if Debtor sought relief under the Bankruptcy Code. Debtor further argues that money advanced by Creditor to pay off the negative equity went to the lender of the trade-in vehicle, the Chrysler, and not to satisfy the purchase price of the Chevrolet. For these reasons, Debtor argues that Creditor should be allowed a secured claim only up to the purchase price of the Chevrolet.

Creditor filed a Response to Debtor's Objection to Claim and Brief in Support arguing cram down of a secured claim is prohibited by the "hanging paragraph", the unnumbered paragraph immediately following 11 U.S.C. §1325(a)(9) of the Bankruptcy Code. Creditor argues that the plain language and Congressional intent of the hanging paragraph indicates that a purchase money security interest acquired within the 910-day period preceding a bankruptcy filing is protected from cram down. Creditor also argues that negative equity is part of a purchase money security interest and should not be crammed down.

## JURISDICTION AND VENUE

The court has jurisdiction of this matter pursuant to 28 U.S.C. §§151, 157 and 1334 (2007) and Local Rule 81-9.01 (B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(B) (2007). Venue is proper in this District under 28 U.S.C. §1409(a) (2007).

2

## CONCLUSIONS OF LAW

The first issue is whether Debtor may cram down Creditor's claim to the retail value of the purchased vehicle. Pursuant to the "hanging paragraph", the unnumbered paragraph immediately following 11 U.S.C. §1325(a)(9), the cram down provision of §506, which allows claims to be bifurcated based on whether they are considered secured or unsecured, is inapplicable if:

> ...the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt is incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for the debt consists of a motor vehicle … acquired for the personal use of the debtor, or if collateral for the debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(9).

Here, Debtor states that the Chevrolet was purchased for Debtor's personal use within 910 days of filing bankruptcy. The next issue is whether Creditor held a purchase money security interest in the claim against Debtor. Since no definition for a "purchase money security interest" can be found in the Bankruptcy Code, courts look to state law to define it. Missouri's version of §9-103 of the Uniform Commercial Code provides, in relevant part, that a purchase money security interest is a security interest to the extent that the goods are used as collateral to ensure that a party meets its obligation to pay the price or value given to the collateral to acquire rights in or the use of the collateral. MO. REV. STAT. 400.009.103 (2007). A purchase money security interest gives the holder priority over other creditors. *In re Acaya*, 369 B.R. 564 (Bankr. N.D. Cal 2007).

Debtor purchased the Chevrolet from Creditor. In exchange, Debtor traded-in the Chrysler with a balance due of $7,149.65. Debtor was given a $3,000.00 credit toward the balance due on the Chrysler as a trade-in allowance. Thus, Debtor still owed $4,149.65 on the Chrysler. The excess debt less the vehicle trade-in value is known as negative equity. *In re Pajot*, 371 B.R. 139 (Bankr. E.D. Va. 2007). Creditor loaned Debtor $4,149.65 to pay off the balance due on the traded-

3

in Chrysler. Then, Creditor rolled this loan, which represents negative equity, into the loan transaction for the purchase of the Chevrolet.

The portion of the loan for the Chevrolet is a purchase money security interest. Since Debtor is in possession of the vehicle, it can be used as collateral if Debtor does not satisfy her obligation to pay the loan. In other words, if Debtor does not pay the loan, the Chevrolet may be repossessed and sold to pay off the debt. The issue here is whether Creditor holds a purchase money security interest in the portion of the loan that represents the negative equity from the financing of the balance owed on the traded-in Chrysler.

Debtor puts forth *In re Price, 363 B.R. 734 (Bankr.E.D.N.C. 2007), In re Acaya, 369 B.R. 564 (Bankr.N.D.Ca. 2007)* and *In re Pajot, 371 B.R. 139 (Bankr.E.D.Va. 2007)* in support of Debtor's argument that packaging negative equity financing with an underlying purchase transaction does not transform the entire debt into a purchase money security interest. "The concept of 'purchase money security interest' requires a close nexus between the acquisition of the collateral and the secured obligation". *In re Acaya*, 369 B.R. at 567 The close nexus theory requires that the negative equity be an integral part of the financial transaction. Here, no evidence exists that Creditor financing the payoff of Debtor's traded-in Chrysler was essential to Debtor acquiring the Chevrolet. Moreover, the Chrysler was traded-in, and there is no collateral for that portion of the loan. Therefore, a close nexus does not exist between the acquisition of the Chevrolet and the loan provided by Creditor to pay off the traded-in Chrysler, because Debtor had the option of paying off the original debt on the Chrysler using other means.

> In essence, at the moment the first vehicle was "bought" by the second creditor as a trade-in, the secured debt held by the first creditor is satisfied by the value paid for the car. The deficiency—the amount the first creditor's debt exceeds collateral value as determined at the time of the trade—is the negative equity. This deficiency is unsecured just as it would be if the first creditor had foreclosed. Therefore, the substance of the transaction, though instantaneous, is that the second creditor is paying off the debtor's unsecured defi-

4

> ciency debt on the first vehicle.  If the second creditor did not
> pay that debt off, the debtor would have the option of
> continuing to make payments to the first creditor, but that
> debt would be unsecured.

*In re Pajot*, 371 B.R. at 154.

Since financing the negative equity in a trade-in vehicle does not give rise to a purchase money security interest, the hanging paragraph is inapplicable to this part of the claim.  Thus, the negative equity does not rise to the status of a purchase money security interest.  Therefore, the portion of the transaction corresponding to the negative equity is not entitled to a purchase money security interest.

Here, Creditor has a purchase money security interest of $20,164.49 and a non-purchase money security interest of $4,149.65.  When a transaction is determined to be partially purchase money and partially non-purchase money, the court has discretion to apply the dual status rule or the transformation rule to the treatment of the secured claim.  *In re Acaya*, 369 B.R. at 570.  Thus, the final issue is whether the dual status rule or the transformation rule should be applied.  "Under the dual status rule, adopted in *Pristas*, a security interest is a purchase money security interest only to the extent it secures the purchase price of the collateral, even if it secures other items".  *In re Acaya*, 369 B.R. at 570 (citing *Pristas v. Landaus of Plymouth, Inc.*, 742 F.2d 797, 800-01 (3rd Cir. 1984)).  *Acaya* discussed the fact that the "inclusion of the nonpurchase money component does not destroy the purchase money character" of a claim.  *Id.*  Under the transformation rule, "a security interest that is part purchase-money and part non-purchase-money completely loses its purchase-money character and is entirely transformed into a non-purchase-money security interest".  *In re Pajot*, 371 B.R. at 157 (holding that a portion of the claim representing negative equity may be bifurcated because it is not a purchase money security interest).

*Pajot* explained that in a Chapter 13 plan, secured claims are usually paid in full, while unsecured claims must only be paid in excess of what would be recovered in a Chapter 7 liquidation.  *Id.* at 146.  Thus, most unsecured claim payments amount to mere pennies on the

dollar. "Bifurcation of a claim in this manner therefore provides the creditor 100% recovery on the secured portion of its claim but likely far less than 100% recovery on the unsecured portion". *Id.*

The Court in *Pajot* found that the dual status rule was more compelling because the facts provide straightforward, negative equity valuations. This was also the holding in *Acaya*. Thus, where the negative equity amount is clearly delineated within the financial transaction, the dual status rule can easily be applied. Moreover, the accounting problems associated with vehicle trade-ins that lead other courts to use the transformation rule are avoided.

This Court will apply the dual status rule because the negative equity in this transaction is distinguishable from the purchase price of the Chevrolet. *Pajot* articulated the hope that applying the dual status rule would encourage clear treatment of the parts of a vehicle financing transaction and lead to agreement among parties as to values in future negative equity cases. *Id.* at 158. In enacting the hanging paragraph, Congress' goal was to prevent the damage that could result if debtors were allowed to acquire a vehicle in the months leading up to bankruptcy, file bankruptcy and cram down the creditor's claim to the value of the collateral on the date of filing. If allowed, debtors would reap a benefit by cramming down the debt and only paying a secured claim equal to the depreciated value of the car. As noted in *Pajot*, if this Court applied the transformation rule here, this would destroy the intent of the hanging paragraph and make it ineffective in almost half of the vehicle financing transactions it was designed to address. *Id.* at 159.

This Court agrees with *Pajot's* application of the dual status rule because it preserves the intent of the hanging paragraph to the extent that the collateral is purchase money. "Thus, the dual status rule preserves the purpose of the hanging paragraph for vehicle lending transac-tions—protecting the creditor from having its secured claim reduced by rapid depreciation of collateral–whereas the transformation rule would completely undermine the hanging paragraph whenever equity was rolled in". *Id.* at 159. Like the *Pajot* Court, this Court believes that classifying negative equity as part of the purchase money security interest would over extend the hanging

6

paragraph's anti-bifurcation provision.  In turn, the debtors would reap a windfall, which was not Congress' intent.

This Court agrees with the rationale of *Pajot* and *Acaya* in adopting the dual status rule as a compromise result, in contrast to either rendering the hanging paragraph almost meaningless by applying the transformation rule, or giving it power beyond its intent by including negative equity in the definition of purchase money security interests.  Therefore, Creditor will be allowed a secured claim of $20,164.49 and an unsecured claim for the negative equity of $4,149.65.  Therefore,

**IT IS ORDERED THAT** Debtor's Claim Objection is SUSTAINED and the claim of Nuvell Credit Company L.L.C. is allowed as a secured claim in the amount of $20,164.49 and as an unsecured claim in the amount of $4,149.65.

KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED:  April 14, 2008
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Lisa Renee Callicott
5221 Lexington
Saint Louis, MO 63115

 Ross H. Briggs
4144 Lindell Blvd., suite B-100
St. Louis, MO 63108

Nuvell Credit Company LLC
Riezman Berger, P.C.
7700 Bonhomme, 7th Fl
St. Louis, MO 63105

Angela Renee Huffman
Riezman Berger, P.C.
7700 Bonhomme, 7th FLoor
St. Louis, MO 63105

Marilyn J. Washburn
Riezman Berger, P.C.
7700 Bonhomme, Fl. 7
St. Louis, MO 63105